` IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH DANIELS,** | : | CIVIL NO. 1:CV-05-1601 |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **DONALD KELCHNER, et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Keith Daniels, an inmate formerly incarcerated at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. The matter proceeds on amended complaint wherein Plaintiff alleges that Defendants, past and present employees at SCI-Camp Hill, subjected him to excessive force, issued false misconducts against him, denied him due process with regard to the resulting misconduct hearings, and denied him adequate medical treatment. (Doc. No. 31.) He further alleges that Defendants deprived him of food, water, exercise, showers and legal/religious materials, as well as subjected him to unsanitary cell conditions. Defendants' motion for summary judgment filed on July 28, 2008, is ripe for disposition. (Doc. No. 100.) For the reasons that follow, the motion will be granted.

**I.    STATEMENT OF FACTS**

This action arises from events that occurred during a six (6) month period beginning on August 13, 2003, while Plaintiff was incarcerated at SCI-Camp Hill. In the amended complaint, Plaintiff alleges civil rights violations against Correctional Officers Bloor, Twigg, Alianiello, Alba, Cousins, Zimmerman and Webb, as well as Lieutenant Rosenberger and Hearing Examiner Andrade. He contends that on August 12, 2003, he was transferred to SCI-Camp Hill from the

Philadelphia County Prison System to begin a state prison term of 10 to 20 years. As a new commitment, he was placed in a quarantine unit to begin the classification process and obtain clearance to be transferred to general population. The following morning, Plaintiff and his cellmate were called out for blood work. When Plaintiff arrived at the guard station, the Sergeant was upset with him for not exiting his cell at the same time as his cellmate and called Plaintiff a "f***ing dick-head nigga." (Doc. No. 31, Amended Compl. at 5.) Plaintiff told the Sergeant he did not need to speak to him in that way. As Plaintiff proceeded up the stairs Defendant Twigg called Plaintiff a "tuff guy." (Id.)

Twigg thereafter instructed Plaintiff to go back to his cell, and then proceeded down the steps toward Plaintiff walking so close that he stepped on the back of Plaintiff's ankle. Twigg then intentionally lunged his chest into Plaintiff's back, causing Plaintiff to stumble forward. Plaintiff claims that Twigg was attempting to provoke a physical confrontation. As Plaintiff proceeded through the doorway on his way back to his cell, he claims that Defendant Bloor jumped on him from behind, and placed him in a tight chokehold. (Id. at 6.)

Twigg arrived within seconds and joined in the assault by grabbing Plaintiff while Bloor choked him. Both Defendants picked Plaintiff up off his feet and slammed his face into the floor. They thereafter pinned Plaintiff down with their weight, and twisted his arms behind his back, tightly handcuffing him. (Id. at 7.) Plaintiff states that his pleas to Defendants to stop were ignored.

While still pinned to the floor, Plaintiff alleges that Defendants Alba, Cousins, Alianiello and Zimmerman arrived. They failed to intervene to stop the assault. After Bloor punched Plaintiff in the face, said Defendants joined in by repeatedly punching and kicking Plaintiff's

"face, head, back, arms, buttocks, testicles, and stomach." (Id. at 8.) Thereafter, Defendant Cousins pulled Plaintiff up by his shirt, and dragged him down the corridor. Plaintiff states that he had blood dripping from his mouth, nose, wrist and knees. (Id. at 9.)

Plaintiff was then taken to see a nurse, who wiped the blood from him and took two pictures. Before he could explain that he had just been assaulted, Defendants Bloor, Twigg, Alba, Cousins and Alianiello took him to the solitary confinement unit ("SCU"). Once there, Plaintiff states he was met by Defendants Webb and Rosenberger who conducted a strip/body cavity search. Plaintiff requested to see a doctor due to the pain from his injuries, but was instructed not to speak or move. After being thrown onto the floor of a cell, Plaintiff complains about the manner in which his handcuffs were removed through the pie-hole in the cell door.

Plaintiff further complains about the filthy condition of the SCU cell. He states that urine and feces were backed up in the toilet and smeared on the walls. He also maintains that the cell did not contain hot water, a mattress, bedding or toilet paper. He complains that he was not provided with clean clothing for two weeks and found inedible objects in his food. He was also denied showers and yard exercise during the entire six month period.

On or about August 27, 2003, Plaintiff contends that while he was sleeping, a SCU guard delivered three (3) misconduct reports written against him by Defendants Bloor, Twigg, Alba, Cousins and Alianiello which stemmed from the assault incident. Also delivered were the hearing examiner dispositions with respect to each of the misconducts. (Id. at 11; Exs. B-D1.) Plaintiff had no knowledge of any misconduct reports being written against him until this time. He claims that the reports did not contain the date, time and signature of the person serving the notice. It is his contention that the misconduct reports were fabricated and processed so that

Plaintiff could not file appeals. According to Plaintiff, hearings on the misconducts were held by Defendant Amdrade in absentia, and he was found guilty with respect to all three reports.[1] (Id. at 12.)

Plaintiff claims that for the entire six (6) month period he was in the SCU, his requests to see a doctor about his injuries from the assault were denied by Defendants and the SCU guards. He states that he now walks with a limp and is unable to play sports, run or exercise. Further, he suffers from headaches as well as back, leg and neck pain. (Id. at 14.) Plaintiff seeks injunctive, declaratory and compensatory relief.

## II.     STANDARD OF REVIEW

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ P. 56(c); Saldana v.Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). In considering a motion for summary judgment, inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

Rule 56(c) imposes a burden on the moving party to point to an absence of evidence supporting the nonmoving party's case. Celotex Corp. v. Caltrett, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the burden shifts to the nonmoving party, who "may

---

[1] Misconduct report #A353469 was issued by Bloor and contained charges of assault, using abusive or obscene language to an employee and refusing to obey an order. Plaintiff was sanctioned to 90 days disciplinary custody with respect to this charge. The second report, #A353470, was issued by Twiggs and Bloor charging Plaintiff with assault. Plaintiff was again sanctioned to 90 days disciplinary custody. The third misconduct report #A608398 was written by Webb, Cousins, Alba and Alianeillo. Plaintiff was charged with refusing to obey an order and received a sanction of 30 days disciplinary custody.

not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); Saldana, 260 F.3d at 232.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must "set out specific facts showing a genuine issue for trial." Fed. R Civ. P. 56(e)(2).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id.  Even so, "all that is required [by Rule 56(e)(2)] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 288-89 (1968).  Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).  Allegations made without any evidentiary support may be disregarded. Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**III.   DISCUSSION**

In moving for summary judgment, Defendants assert that Plaintiff failed to exhaust his administrative remedies with respect to all of his claims.  In the alternative, Defendants argue that (1) Plaintiff's evidence is insufficient to maintain a claim for excessive force under the Eighth Amendment; (2) Plaintiffs' claims of fabricated and unserved misconduct reports cannot

survive summary judgment; (3) Plaintiff's claim for denial of adequate medical care is not supported by the undisputed record; and alternatively, (4) Defendants are entitled to summary judgment on the basis of qualified immunity. (Doc. No. 106, Defs.' Br. Supp. Sum. J.) The Court will first address the exhaustion argument, as it is dispositive of the pending motion.

Exhaustion of administrative remedies by an incarcerated person suing over matters arising out of his confinement is mandated by 42 U.S.C. § 1997e(a), which provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative remedies is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement. Nyhuis, 204 F.3d at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S.Ct. 910, 918-19 (2007). Nevertheless, "failure to exhaust is an affirmative defense

that must be pled and proven by the defendant."  Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387  (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id at 2386.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 2387 (quoting Porter, 534 U.S. at 525.)  Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default.").  Procedural default is a question of law.  Id. at 232.

In seeking summary judgment on the basis of exhaustion, Defendants submit the following evidentiary materials: the declaration made under penalty of perjury of Leilani Sears, an Administrative Officer in the Secretary's Office of Inmate Grievances and Appeals and the exhibits attached thereto (Doc. No. 107, Ex. 15, Sears Decl., Exs. B-E), and portions of the Plaintiff's deposition transcript (Doc. No. 107, Ex. 1, Daniels Dep.; Doc. No. 125, Supp. Ex., Daniels Dep.).  These submissions establish the following.

The Pennsylvania Department of Corrections has established a Consolidated Inmate Grievance Review System as set forth in DC-ADM 804.  This policy is included in the Inmate

Handbook provided to each inmate and serves as the grievance rules and regulations of the DOC. (Doc. No. 107, Ex. 15, Sears Decl. ¶ 2, Ex. 1; Daniels Dep. at 26.)  DC-ADM 804 outlines the necessary steps for filing a grievance and taking appeals from initial grievance determinations, and provides for three levels of administrative review - (1) Initial Grievance to Facility Grievance Coordinator; (2) appeal to the Superintendent; and (3) appeal for final review to the Secretary's Office of Inmate Grievances and Appeals.  (Id., Sears Decl. ¶ 4, Ex. A.)

An inmate must submit a grievance for initial review within "15 working days after the event upon which the claim is based."  (Id. at ¶ 5, Ex. A.)  Once the grievance is submitted, the Facility Grievance Coordinator assigns it a tracking number and enters the grievance number into an automated inmate grievance tracking system.  (Id. at ¶ 6, Ex. A.)  The Secretary's Office of Inmate Grievances and Appeals maintains a hard copy file and a computer database of all appeals that are made to the Secretary's Office of Inmate Grievances and Appeals.

Sears, the custodian of these records, states that Plaintiff has filed twelve (12) grievances since he began his current term of imprisonment on August 12, 2003.  (Id. at ¶ 9.)  According to the automated grievance tracking system, the first grievance of record was filed by Plaintiff on April 12, 2004 (#81026), and none of the 12 grievances filed exhausted his administrative remedies with regard to the claims set forth in the amended complaint.

With respect to the excessive force claim against Defendants Twigg, Bloor, Alba, Zimmerman, Alianiello and Cousins, Plaintiff did not exhaust his administrative remedies.  On November 2, 2004, he filed grievance #100451 for initial review with Ian Taggart, Facility Grievance Coordinator.  Plaintiff filed this grievance after he was transferred to SCI-Smithfield. In the grievance Plaintiff states that "this Grievance is a continuance from a grievance process

that was initiated on 11/3/03," regarding the assault he claimed occurred on August 13, 2003, while confined at SCI-Camp Hill.  (Id., Sears Decl. ¶¶ 10, 11, Ex. B.)

On November 3, 2004, Taggart rejected the grievance because it was not submitted within 15 working days of the event upon which the claim is based as required by DC-ADM 804.  (Id., Sears Decl. ¶ 12, Ex. C.)  Plaintiff appealed the rejection of grievance #100451 to Superintendent Donald Kelchner.  On December 1, 2004, Kelchner denied the appeal explaining that the rejection for untimeliness was appropriate, and that "a review of the record indicates that [Plaintiff] did not file a previous grievance on this matter."  (Id. at ¶ 13, Ex. D.)

On December 13, 2004, Plaintiff filed an appeal from Superintendent Kelchner's decision to the Secretary's Office of Inmate Grievances and Appeals.  In the appeal, Plaintiff references the prior grievance, and encloses a copy of a grievance form dated 11/3/03 and allegedly submitted by Plaintiff setting forth the assault claim.  (Id. at ¶ 14, Ex. E.)

Sharon Burks, Chief Grievance Coordinator in the Secretary's Office of Inmate Grievances and Appeals dismissed Plaintiff's appeal on February 3, 2005.  Burks found that the grievance was properly rejected by Kelchner, in that the claims were untimely, and that Plaintiff's argument that the grievance was a "continuation" of an earlier grievance allegedly filed was not permitted.  (Id. at ¶ 15, Ex. F.)

Defendants maintain that based upon the foregoing evidence, there is no record of Plaintiff filing a grievance on November 3, 2003.  The first record of a grievance was the one filed by Plaintiff on April 12, 2004, and dealt with a complaint about publications while housed at SCI-Smithfield.  (Id. at ¶ 16.)  The other eleven (11) grievances, which include the excessive force "continuation" grievance #100451 discussed above, were filed with SCI-Smithfield from

9

April 12, 2004, to the present. (Id. at ¶ 17.) Defendants point out that because Plaintiff was transferred to SCI-Smithfield in January 2004, the 11 grievances could only involve timely claims by Plaintiff regarding conditions at SCI-Smithfield, not SCI-Camp Hill.

Further, Defendants argue that the record fails to support any claim by Plaitniff that he was unable to obtain grievance forms based upon his own admissions in his deposition testimony. For example, Plaintiff states that inmates have to ask the staff at SCI-Camp Hill for a grievance form, and that "[t]hey don't like giving them up, but they do." (Doc. No. 107, Ex. 1, Daniels Dep. at 7.) In addition, he admits that he was able to ask a counselor for a grievance form. (Id. at 28.) He further testifies that he never grieved any of his complaints about cell conditions, stating that he ". . . was thinking of writing them up for that, but [he] didn't write them up for that." (Id. at 129.) He also states that he never attempted to file a grievance about being denied meals, showers and yard exercise. (Id. at 140-142.)

Based on the foregoing evidence, Defendants maintain that Plaintiff did not exhaust the administrative process with regard to any of his claims. They state that the claims are procedurally defaulted, and summary judgment is warranted in their favor.

In response to Defendants' motion, Plaintiff must go beyond the pleadings and by affidavits or by depositions, answers to interrogatories and admissions, designate specific facts showing a genuine issue for trial. He may not rely merely on allegation or denials in his own pleading. See Fed. R. Civ. P. 56(e)(2). An issue of fact is genuine only if reasonable jurors considering the evidence presented could find for the non-moving party.

In his amended complaint, Plaintiff alleges that while he was confined in the SCU for the six (6) month period, guards denied him grievances and he was unable to grieve his assault or

any actions of the Defendants.  (Doc. No. 31, Amended Compl. at ¶ 78.)  In responding to Defendants' motion with respect to the exhaustion issue, Plaintiff submits his opposing brief with attached exhibits (Doc. No. 119), his own declaration made under penalty of perjury (Doc. No. 120); and a statement of disputed facts (Doc. No. 121).  The statement of disputed facts fails to set forth any information with regard to the issue of exhaustion or the filing of grievances.  Plaintiff merely reasserts his claims and states that they are disputed issues of fact.  In his opposing brief, Plaintiff admits that he did not exhaust administrative remedies, but refers the Court back to ¶ 78 in his amended complaint wherein he claims he did not do so because the Defendants deprived him of the opportunity to file grievances. (Doc. No. 119 at 10.)  While he submits exhibits along with his opposition brief which consist of photographs of himself and legal precedent addressing the merits of an excessive force claim, none of these submitted materials have any relevance to or create any issues of fact with respect to the exhaustion issue.

　　　　The only other document submitted in opposition to Defendants' summary judgment motion is Plaintiff's own declaration made under penalty of perjury.  (Doc. No. 120.)  Again, Plaintiff proceeds to reassert the allegations contained in his complaint.  He states that each time he asked for a grievance, he was denied except on one occasion on November 3, 2003, when he filed a grievance about the assault incident.  In the declaration he claims that this grievance contained the other issues asserted in the amended complaint.  He does not attach any documents in support of his claim evidencing that any such grievance was actually filed.  (Doc. No. 120 at ¶ 51.)  This unsupported assertion completely contradicts Plaintiff's deposition testimony that (1) he was not able to obtain grievances while at SCI-Camp Hill and (2) he did not pursue grievances with respect to the other issues raised in the amended complaint.

The only document contained in the entire record that even references a November 3, 2003 grievance is submitted by Defendants as an exhibit to the declaration of Leilani Sears. Specifically, in Plaintiff's appeal of grievance #100451 to the Secretary's Office of Inmate Grievances and Appeals on December 13, 2004, wherein he challenges the denial of his "continuation" grievance on the assault claim, he attaches a copy of a grievance form dated November 3, 2003, for the first time. In said appeal, Plaintiff attempts to argue that he originally filed the attached grievance almost a year earlier, but never heard back with regard to the grievance. (Doc. No. 107, Ex. 15, Sears Decl., Ex. E.) The grievance form Plaintiff attaches as an exhibit to said appeal does not have an assigned grievance number and fails to contain the signature of a Facility Grievance Coordinator evidencing the receipt of the form or a date acknowledging when it was received. (Id.)

The sole fact that this document is contained in the record does not create a genuine issue of material fact preventing the entry of summary judgment in favor of Defendants on the issue of exhaustion, as the record evidence would not permit a jury to return a verdict for Plaintiff. Plaintiff's attempt to circumvent the obligation to exhaust by arguing that Defendants refused to provide him a grievance form is completely lacking in evidentiary support, including his own deposition testimony. Defendants have come forth with evidence that Plaintiff only filed twelve grievances since his August 12, 2003 confinement, and none of these grievances exhaust the claims contained in the amended complaint. Plaintiff's own deposition testimony demonstrates that he did not pursue grievances with regard to any of the other issues raised in addition to the assault claim. While there is evidence that Plaintiff did pursue a grievance related to the assault issue, the record clearly demonstrates that this grievance was rejected as untimely. Any attempt

by Plaintiff to tie the untimely grievance into a previous grievance he claims to have filed in November of 2003 was rejected and is unsupported.  There simply is no evidence in the record to create an issue of fact by showing such a grievance was ever filed by Plaintiff.  Plaintiff merely submits his own unsupported allegations and a copy of an unsigned grievance dated November 3, 2003, which he submitted as an exhibit to an appeal a year later which was never assigned a grievance number or ever acknowledged as received by the grievance coordinator.

Further, the record is replete with instances wherein Plaintiff attempts to create issues of fact by setting forth unsupported allegations in his opposing brief and declaration.  Not only are these statements self-serving and lacking in evidentiary support, but they also contradict the testimony he gave in his deposition.  For example, he admits in his deposition testimony that grievance forms could be obtained at SCI-Camp Hill and that he never attempted to grieve the issued he raises in the amended complaint other than the assault issue.  With regard to the assault claim, he comes forward with no evidentiary materials to create a genuine issue of material fact as to whether the assault claim was exhausted.  Accordingly, Defendants are entitled to the grant of summary judgment with respect to all claims.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEITH DANIELS,** | : | **CIVIL NO. 1:CV-05-1601** |
| **Plaintiff,** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **DONALD KELCHNER, et al.,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW, THEREFORE, THIS 18ᵗʰ DAY OF MARCH, 2009,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (Doc. No. 100) is **GRANTED**.

2. The Clerk of Court is directed to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff.

3. The Clerk of Court is further directed to **CLOSE** this case file.

S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania
